UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**REANETTA HUNT**,

          Plaintiff,

    v.                               Case No. 25-cv-2671 (CRC)

**LONITA KERMITTA BAKER**,

          Defendant.

## MEMORANDUM OPINION

In early 2022, Reanetta Hunt was appointed as executive director and chief administrative officer of the National Bar Association ("NBA" or "the Association"), a national network of predominantly African American attorneys and judges. But her tenure as an NBA executive was cut short, allegedly because of a "sustained pattern of tortious interference and misuse of authority" by Lonita Baker, the former president of the NBA. Compl. ¶ 1. In her complaint—which spans more than 200 pages, including 32 exhibits—Hunt describes a months-long campaign by Baker to "centraliz[e] control," "perpetuate[] dysfunction," and "orchestrat[e] maneuvers to force [Hunt's] removal" from the NBA. Id. ¶¶ 12, 14, 18.

The issue presented here is not whether Hunt's claims have merit; it is whether they may be heard in this Court. Hunt filed this lawsuit in the Superior Court of the District of Columbia. Baker then removed the case to federal court based on diversity jurisdiction. See 28 U.S.C. § 1332(a). Now, Hunt asks the Court to remand the case to the D.C. Superior Court because there is insufficient evidence that the $75,000 "amount in controversy" requirement for diversity jurisdiction is satisfied. The Court agrees, so it will grant Hunt's motion to remand.

I. **Background**

In January 2022, Hunt was chosen to serve as the NBA's executive director and chief administrative officer. Compl. ¶ 24. As executive director, Hunt would supervise the NBA's administrative staff, oversee the operation of the Association's central office, and maintain the Association's records. Compl., Ex. K at 5. Hunt signed a three-year employment agreement with the Association, which included a base salary of $200,000, health and retirement benefits, and performance-based incentives. Compl. ¶ 25. She began work in March 2022. Id.

Baker's term as the NBA's president did not begin until several months later. Id. ¶ 1. But the complaint alleges that, as president-elect, Baker "launch[ed] a calculated campaign to undermine [Hunt's] leadership and ultimately orchestrate her removal." Id. ¶ 28. As part of this scheme, Baker purportedly (1) interfered with Hunt's administrative duties; (2) assumed control of the Association's communications function; (3) undermined Hunt's authority as executive director; (4) falsely accused Hunt of disobeying the Association's board of governors; (5) fabricated a letter attacking Hunt's professionalism; and (6) encouraged a part-time NBA employee to file a complaint against Hunt. See id. ¶¶ 34, 36, 39, 41–44, 65–67. According to the complaint, Baker then arranged for Hunt to be placed on administrative leave—and ultimately fired—by the Association's board of governors in October 2022. Id. ¶ 46–47.

After her termination, Hunt sought other employment opportunities. Specifically, she "engaged in negotiations for a $260,000 consulting contract with the Pulaski County Sheriff's Office to develop a strategic communications and community engagement plan." Id. ¶ 73. Hunt claims that while her proposal was "initially well-received," the Sheriff's Office declined to proceed because of "Baker's dissemination of false and damaging narratives about [Hunt] within her professional network." Id. ¶¶ 73–74.

In October 2023, Hunt filed a complaint advancing breach of contract and defamation claims against the NBA and one of its contractors in D.C. Superior Court.  See Complaint, Hunt v. Nat'l Bar Ass'n, No. 2023-CAB-006395 (D.C. Super. Ct. Oct. 14, 2023).  Hunt later added Baker as a defendant, alleging that she engaged in retaliation, defamation, and tortious interference with contractual relations.  See First Amended Complaint, Hunt v. Nat'l Bar Ass'n, No. 2023-CAB-006395 (D.C. Super. Ct. Oct. 23, 2024).  Earlier this year, the D.C. Superior Court dismissed Hunt's claims against Baker because she failed to effectuate proper service.  See Omnibus Order at 16, Hunt v. Nat'l Bar Ass'n, No. 2023-CAB-006395 (D.C. Super. Ct. Feb. 27, 2025).  Hunt's breach of contract claim against the NBA—in which she seeks at least $500,000 in compensatory damages—remains pending.  See Second Amended Complaint at 24, Hunt v. Nat'l Bar Ass'n, No. 2023-CAB-006395 (D.C. Super. Ct. Mar. 3, 2025).

Hunt then filed this standalone action against Baker, again in D.C. Superior Court.  The complaint includes two claims.  First, Hunt alleges that Baker tortiously interfered with her contractual relationship with the NBA by "orchestrating a sustained campaign of obstruction and sabotage" that resulted in her "wrongful[] terminat[ion] less than eight months into her three-year term," "the loss of substantial salary, benefits, professional opportunities," and "reputational harm."  Compl., Count I ¶ 4.  Second, Hunt claims that Baker tortiously interfered with prospective economic advantage by "disseminating false and retaliatory narratives about [Hunt's] performance and character, damaging her professional standing within the legal and nonprofit communities."  Compl., Count II ¶ 4.  Due to Baker's interference, Hunt purportedly "lost her employment and suffered diminished future earning potential, reputational harm, and substantial emotional distress."  Id. ¶ 5.  The complaint seeks an unspecified amount of (1) compensatory damages "[f]or lost wages, benefits, professional opportunities, reputational

harm, emotional distress, and all other forms of direct and consequential loss"; (2) punitive damages "[t]o penalize and deter" Baker's conduct; (3) equitable relief "to restore [Hunt's] professional standing, reputation, and economic opportunities"; and (4) attorneys' fees and costs. Compl, Prayer for Relief.

In August 2025, Baker removed the case to this Court. She maintained that the Court has diversity jurisdiction over the case because the parties were diverse and the amount in controversy exceeded $75,000. See Notice of Removal ¶ 4; 28 U.S.C. § 1332(a). While acknowledging that the complaint did not "expressly seek a stated sum of money damages," Baker asserted that it is "apparent from the face of the [c]omplaint" that Hunt seeks "well in excess of $75,000[.]" Id. ¶ 7. Hunt now moves to remand the case to the D.C. Superior Court because Baker "cannot establish that [Hunt] seeks more than $75,000 in this case." Pl.'s Mot. to Remand at 1–2. Hunt simultaneously filed a "stipulation regarding damages," in which she agrees to not seek, accept, or enforce any judgment for damages exceeding $75,000. Pl.'s Stipulation Regarding Damages at 1–2. Baker opposes remand.

## II. Legal Standards

When a plaintiff files a civil action in state court, a defendant generally may remove the case to federal court if it falls within the federal court's original jurisdiction. See 28 U.S.C. § 1441(a); District of Columbia v. Grp. Hospitalization & Med. Servs., Inc., 576 F. Supp. 2d 51, 53 (D.D.C. 2008). The defendant "bears the burden of establishing that federal jurisdiction exists." Zuckman v. Monster Beverage Corp., 958 F. Supp. 2d 293, 297 (D.D.C. 2013); see also Bronner on Behalf of Am. Stud. Ass'n v. Duggan, 962 F.3d 596, 610 (D.C. Cir. 2020). This Court "strictly construes removal status because of federalism concerns," and the Court "must resolve any ambiguities concerning the propriety of removal in favor of remand." Johnson-

4

Brown v. 2200 M St. LLC, 257 F. Supp. 2d 175, 177 (D.D.C. 2003). "When it appears that a district court lacks subject matter jurisdiction over a case that has been removed from a state court, the district court must remand the case[.]" Republic of Venezuela v. Philip Morris Inc., 287 F.3d 192, 196 (D.C. Cir. 2002) (citing 28 U.S.C. § 1447(c)).

### III. Analysis

Hunt's motion to remand turns on whether the complaint establishes federal diversity jurisdiction. Federal district courts have diversity jurisdiction over a civil action if "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a). The parties—and now the Court—agree that Hunt and Baker are "diverse," as they are citizens of different states. See Pl.'s Mot. to Remand at 5; Def.'s Opp'n to Mot. to Remand at 4–5. The only remaining issue, then, is whether the amount-in-controversy requirement is satisfied.

In her notice of removal, Baker submits that the amount in controversy is "well in excess of $75,000." Notice of Removal at 3. This claim "should be accepted when not contested by the plaintiff or questioned by the court." Dart Cherokee Basin Operating Co., LLC v. Owens, 574 U.S. 81, 87 (2014). But because Hunt disputes Baker's assertion of the amount in controversy, removal is proper only if the Court finds by a preponderance of the evidence that the amount in controversy exceeds $75,000. See 28 U.S.C. § 1446(c)(2)(B); Gardner v. Erie Ins. Co., 639 F. Supp. 3d 135, 140 (D.D.C. 2022) (citing Dart Cherokee, 574 U.S. at 88). Both parties may submit evidence, including affidavits and declarations, to support their respective claims. See Gardner, 639 F. Supp. 3d at 140; Apton v. Volkswagen Grp. of Am., Inc., 233 F. Supp. 3d 4, 13 (D.D.C. 2017). Ultimately, Baker bears the burden of establishing that the amount in

controversy exceeds $75,000.  See Sloan v. Soul Circus, Inc., No. 15-cv-1389, 2015 WL 9272838, at *5 (D.D.C. Dec. 18, 2015).

Baker does not provide extrinsic evidence supporting her assertion that the Court has jurisdiction over Hunt's complaint.  Instead, she contends that the complaint "on its face conclusively establishes that at the time of removal the amount in controversy exceeded this Court's jurisdictional minimum."  Def.'s Opp'n to Mot. to Remand at 2.  For the tortious interference with contract claim, Baker notes that Hunt's base annual salary was $200,000, and the complaint alleges that "as a direct and proximate result of [Baker's] tortious interference, [Hunt] was wrongfully terminated less than eight months into her three-year term, resulting in the loss of substantial salary, benefits, professional opportunities, and causing reputational harm."  Id. at 5–6 (quoting Compl., Count I ¶ 4(g)).  For the tortious interference with prospective economic advantage claim, Baker points to the complaint's allegation that the Pulaski County Sheriff's Office declined to award Hunt a $260,000 consulting contract because of Baker's "dissemination of false and damaging narratives."  Id. at 6–7 (citing Compl. ¶¶ 71, 73–74).  Because Hunk seeks compensatory damages "from the loss of her $200,000 per year employment contract and a $260,000 lost employment contract," Baker says, the complaint "conclusively establishes that . . . the amount in controversy requirement is easily met."  Id. at 9.

But in Hunt's view, the complaint does not "conclusively establish[]" any specific amount of relief.  Hunt first submits that the complaint "does not allege that [Baker] is responsible for the full . . . value" of her NBA employment contract; it seeks only damages caused by Baker's tortious interference.  Pl.'s Mot. to Remand at 5.  She then notes that her proposal to the Sheriff's Office was "non-final," and there is no evidence of the "net value" of the contract or any "reasonable certainty" that Hunt would ultimately receive it.  Pl.'s Reply in

Supp. of Mot. to Remand at 4.  Moreover, she adds, Baker failed to provide a "record-based valuation" of punitive damages or the cost of injunctive relief, and attorneys' fees cannot count towards the amount in controversy.  Id. at 4–5.

While it is a close call, Baker has failed to satisfy her burden of proving that the amount in controversy exceeds $75,000.  First, as noted above, Baker did not provide any affidavits, declarations, or other evidence supporting her notice of removal.  See Apton, 233 F. Supp. 3d at 14 ("'[W]hen the plaintiff contests, or the court questions, the defendant's allegation' about the amount in controversy once the case has been so removed, '[e]vidence establishing the amount is required[.]" (second alteration in original) (quoting Dart Cherokee, 574 U.S. at 89)); cf. Pesticides v. Dr Pepper Snapple Grp., Inc., 322 F. Supp. 3d 119, 122 (D.D.C. 2018) (concluding that the amount in controversy was satisfied based on a sworn declaration submitted by the defendants).

Second, the complaint itself does not definitively set the amount in controversy.  See Breakman v. AOL LLC, 545 F. Supp. 2d 96, 103 (D.D.C. 2008) (recognizing a "strong presumption" that a complaint filed in state court does not allege an amount in controversy sufficient to confer federal jurisdiction (citation omitted)); Sloan, 2015 WL 9272838, at *6 (noting that Dart Cherokee did not disturb the "strong presumption" articulated in Breakman); St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 290 (1938).  The complaint states that for her claim of tortious interference with contract, Hunt "is entitled to compensatory and punitive damages in an amount to be determined at trial."  Compl., Count I ¶ 4(h).[1]  And for her claim of tortious interference with prospective economic advantage, Hunt claims only that

---

[1] Hunt points out that she does not bring a breach of contract claim against Baker. Rather, the "breach-of-contract claims are the subject of a *separate* lawsuit against the NBA, which remains pending" in D.C. Superior Court.  Pl. Mot. to Remand at 5 (emphasis added).

Baker's wrongful acts "materially contributed to the Sheriff's Office's decision" not to hire her as a contractor. Compl. ¶ 74. While the complaint does suggest some *causal* relationship between Baker's actions and the loss of the two contracts—which is a necessary element of a tortious interference claim—it is ultimately silent as to the *amount* of damages she requests. See Zuckman, 958 F. Supp. 2d at 299 (finding that a complaint was ambiguous because the plaintiff did not "expressly indicate[]" the full extent of his damages); Ma v. United Rentals (N. Am.), Inc., 678 F. Supp. 3d 412, 416 (S.D.N.Y. 2023) ("Allegations of injury themselves, without any statement of damages, . . . do[] not give rise to a finding that the amount in controversy exceeds $75,000.")

Third, Hunt has subsequently "clarif[ied] the amount in controversy" in an effort to resolve the complaint's ambiguity. Zuckman, 958 F. Supp. 2d at 300. In addition to her motion to remand, Hunt simultaneously submitted a "stipulation regarding damages" in which she "expressly confirms that she has not sought and will not seek damages exceeding $75,000 in this action." Pl.'s Stipulation Regarding Damages at 1. The stipulation, which is "intended to be fully binding upon [Hunt]," states that she "stipulates and agrees that she will not seek, accept, or enforce any judgment for damages, whether compensatory, punitive, statutory, or otherwise, whether considered individually or in the aggregate, against [Baker] in excess of $75,000, exclusive of interest and costs, in this action." Id. at 1–2.

"In instances where the complaint is ambiguous, the plaintiff—who is, after all, the master of [her] complaint—may hence clarify the amount in controversy with affidavits or stipulations." Zuckman, 958 F. Supp. 2d at 300 (citing Standard Fire Ins. Co. v. Knowles, 568 U.S. 588, 595 (2013)); see also Apton, 233 F. Supp. 3d at 14–15 (holding that the defendants failed to prove that the amount in controversy exceeded $75,000 because the plaintiff "declared

under penalty of perjury that his compensatory damages and attorneys' fees are approximately $13,000" and the defendants offered "no evidence . . . that refutes [the plaintiff's] representations"). Hunt's stipulation clarifies that she will neither seek nor accept nor enforce any judgment for damages in excess of $75,000. Moreover, the stipulation is binding on her under the doctrine of judicial estoppel. Zuckman, 958 F. Supp. 2d at 300 (citing Moses v. Howard Univ. Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010)); Standard Fire, 568 U.S. at 595–96 (noting that stipulations by parties seeking to avoid removal to federal court must be "legally binding on all plaintiffs"). In light of the complaint's ambiguity, Hunt's subsequent stipulation, and the absence of any evidence to the contrary, the Court finds that Baker has failed to prove that the amount in controversy exceeds the jurisdictional minimum. See Apton, 233 F. Supp. 3d at 15; see also Luce v. Kohl's Dep't Stores, Inc., 23 F. Supp. 3d 82, 86 (D. Conn. 2014) (concluding that a post-removal stipulation "suffices to refute any preponderance showing that [the plaintiff's] claim amounts to more than $75,000 in damages"); Taylor v. Am. Fam. Mut. Ins. Co., S.I., No. 21-cv-75, 2021 WL 663167, at *2 (E.D. Mo. Feb. 19, 2021); Arter v. Pathmark Stores, Inc., No. 14-cv-6933, 2014 WL 7426792, at *2 (E.D.N.Y. Dec. 31, 2014) (collecting cases).[2]

---

[2] Baker does not argue that the punitive damages, injunctive relief, or attorneys' fees sought by the complaint would exceed $75,000. In any case, stacking those forms of relief on top of compensatory damages would still not raise the amount in controversy above the jurisdictional threshold. See Apton, 233 F. Supp. 3d at 14 (recognizing that "the mere *possibility* of a punitive damages award is insufficient to prove that the amount in controversy requirement has been met" (citation omitted)); Zuckman, 958 F. Supp. 2d at 302 (noting that "general assertions that the cost of injunctive relief would exceed $75,000 are too speculative to establish diversity jurisdiction"); Griffin v. Coastal Int'l Sec., Inc., No. 06-cv-2246, 2007 WL 1601717, at *3 (D.D.C. June 4, 2007) ("Courts in this District have determined that attorney's fees do not count towards the amount in controversy requirement unless they 'are provided for by a contract in issue or by a statute in controversy.'" (citation omitted)); see also Inst. for Truth in Mktg. v. Total Health Network Corp., 321 F. Supp. 3d 76, 89 (D.D.C. 2018) ("It is well established that a

### IV. Conclusion

For the foregoing reasons, the Court will grant Hunt's motion to remand this matter to the D.C. Superior Court. A separate Order shall accompany this memorandum opinion.

                    CHRISTOPHER R. COOPER
                    United States District Judge

Date: October 17, 2025

---

defendant may not rely on sheer speculation to satisfy its burden of showing the amount in controversy.").